**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|                              |   |                          |
|------------------------------|---|--------------------------|
| **DESIREE WALKER,**          | * |                          |
|                              | * |                          |
| Plaintiff,                   | * |                          |
|                              | * |                          |
| v.                           | * | Case No. RWT 15-cv-2036  |
|                              | * |                          |
| **GLAXOSMITHKLINE (GSK)**    | * |                          |
|                              | * |                          |
| Defendant.                   | * |                          |

### **MEMORANDUM OPINION**

On July 13, 2015, Desiree Walker, acting *pro se*, filed a Title VII complaint alleging that her former employer, GlaxoSmithKline LLC ("GSK") discriminated against her on the basis of race and color. ECF No. 1, at 1. Walker claims that her supervisor at GSK transferred her to another group with different hours, removed her from job duties, isolated her from co-workers, and verbally harassed her. *Id.* at 2. She further alleges that she was turned down for two positions and was told that GSK would not promote black people. *Id.* at 3. GSK filed a Motion to Dismiss for Failure to State a Claim on October 14, 2015. ECF No. 10. The issues have been briefed, and no hearing is necessary. Local Rule 105.6. For the reasons that follow, GSK's Motion shall be granted, and Walker's Complaint shall be dismissed.

### **BACKGROUND FACTS**

In her Response,[1] Walker alleges that that she began working for GSK in July 2012 after it acquired her employer, Human Genome Services. ECF No. 14-1, at 2. Despite being content in her current position and having a good relationship with Grace Hu, her supervisor, Walker

---

[1] Walker claims that she was unaware of the need to state specific facts in her Complaint. She has included additional details in her response. GSK has not objected to these additional facts, and the Court finds that they do not materially affect the outcome of the case, but they are considered in fairness to a *pro se* litigant.

applied unsuccessfully for other positions. *Id*. at 2–3. Walker concedes that out of the two positions for which she applied, she was unqualified for one and the other was turned into a volunteer position. *Id*. at 3, 8. Walker contends that after she applied for the positions, her relationship with Hu deteriorated, allegedly because Hu "was not happy that [Walker] was seeking to leave the group." ECF No. 14-1, at 3. Walker asked Hu's manager for permission to shadow another employee. *Id*. She attempted to shadow during her lunch period or before work, but Hu allegedly reprimanded her "for abandoning [her] team" and "for trying to steal company secrets." *Id*.

Walker alleges that Hu "began to verbally harass [her] . . . slap [her] back or []arm [,] say [she] was lazy or being a bad influence," insinuating that she did not believe that Walker had allergies to specific chemicals or legitimate doctor appointments, and that she was gay. *Id*. at 4. Walker also alleges that she was no longer given additional responsibilities, other employees were receiving credit for her work, and she was being accused of not completing all of her work. ECF No. 14-1, at 4. Walker went to Hu's supervisor, Sue Currie, to report how Hu was treating her. *Id*. Walker alleges that soon after Currie spoke to Hu, Hu cursed at Walker and told her she "was not ready for the position [she was applying for] and that GSK would not promote black people so why [did she] keep trying." *Id*. Walker alleges that Hu also said "the person that was going to hire for the position that [she] was attempting to shadow, was not going to hire me as he did not like black people at all." *Id*. Walker confronted the hiring supervisor.[2] *Id*. He immediately denied the allegation, but stated that he had previously heard of Hu alleging this and would address this issue with Currie. ECF No. 14-1, at 5.

Walker also complains that Hu gave two of Walker's white co-workers preferred job assignments but due to their lack of experience and her knowledge she would complete their

---

[2] Walker does not specify who this person is.

work. *Id.*; ECF No. 18, at 4. She further alleges that these same co-workers were not reprimanded for doing similar things for which she was reprimanded, but she does not allege that any supervisor saw the other co-workers do the similar acts. ECF No. 14-1, at 8. Additionally, Walker alleges that at some point before she was transferred, Hu had a meeting with Walker and another co-worker during which Hu stated that she understood that both women had children and could not work the scheduled hours or days at "LSM,"[3] so she would send someone else. *Id.*, at 4, 8, 11. Despite this meeting, Walker was transferred to LSM. *Id.* at 4. After the transfer, Walker again went to Currie to enter a complaint regarding Hu's treatment toward her and her transfer to LSM. *Id.* In response, Currie replied, "that she would allow [Walker] to work the same schedule but she did not care what was going on and she didn't have to let [her] do anything."[4] *Id.* at 4–5. After this meeting, Walker spoke to a Human Resources representative. ECF No. 14-1, at 5. The representative spoke to both Hu and Currie, after which neither individual spoke to Walker again. *Id.* Walker resigned from GSK soon after. *Id.* Since her resignation, Walker alleges that she has applied to multiple companies in the biotech industry but has been "blacklisted." *Id.* at 12.

## PROCEDURAL HISTORY

In February 2014, Walker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") for events that occurred during her employment with GSK from June 2013 to August 2013. ECF No. 1, at 4. On August 8, 2014, the parties agreed to a Mediation Hearing but did not reach an agreement. ECF No. 14-1, at 2. On April 21, 2015, the EEOC issued a Dismissal and Notice of Rights. *Id*.

---

[3] Walker does not explain what LSM stands for, but when looking at her Memorandum as a whole, LSM seems to be another department in GSK.
[4] There was no indication by either party of: how much time passed between the meeting and when Walker was transferred, how long Walker was working in LSM before she received the accommodation from Currie or if Hu or Currie were still her supervisors in the new department.

Walker filed her complaint in this Court, claiming GSK (GlaxoSmithKline) violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000 *et. seq.*, by discriminating against her based on race and color. ECF No. 1. GSK filed a Motion to Dismiss for failure to state a claim on October 15, 2015. ECF No. 10.[5] After her Motion for Extension of Time to File a Response was granted, Walker filed a Response on December 1, 2015, ECF Nos. 13, 14, along with a Request for Counsel, which was denied. ECF Nos. 15, 16. GSK replied to Walker's Response on December 17, 2015. ECF No. 18.

## DISCUSSION

### I. Standard of Review

#### a. *Pro Se* Standard

A federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Nonetheless, liberal construction does not mean that a court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint in order for it to survive a motion to dismiss. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

[5] Although GSK does not argue the point in its Motion to Dismiss, it indicated in a footnote that "it is GSK's position that service was improper because the entity name on the documents to be served did not match GSK's entity name in GSK's resident agent's records or in the State of Maryland's records. As such GSK's resident agent rejected service." ECF No. 10-1, at 2 n.2. GSK has not pressed this issue and it is immaterial to the Court's analysis.

### b. Motion to Dismiss Based on 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id*. at 679.  In short, a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson Cnty*., 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted).

### c. Title VII Claims

To succeed on a Title VII claim, a plaintiff must allege and prove either direct or indirect discrimination, or meet the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973), which requires a plaintiff to allege (and ultimately prove) a *prima facie* case of discrimination.  See *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526–27, 530 (D. Md. 2015) (citing *Burns v. AAF-McQuay, Inc*., 96 F.3d 728, 731 (4th Cir.1996)).  However, the plaintiff does not need to establish a *prima facie* case in the Complaint to survive a motion to dismiss.  See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* remained consistent with the law of pleading).  Nonetheless, the plaintiff still must satisfy the *Twombly* plausibility standard and state a plausible claim for relief under Title VII.  *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016).

## II. Walker Fails to State a Claim Upon Which Relief Can Be Granted

Walker alleges three different claims against the GSK: (1) racial discrimination (2) racially hostile work environment; and (3) retaliation.  ECF No. 1, at 2–3; ECF No. 14-1, at 7–11.  She has not alleged direct or indirect discrimination (her complaint is devoid of factual allegations that any acts of the Defendant or its employees were based on race or color), so her claims must be analyzed under the *McDonnell Douglas*-framework to determine if she has alleged sufficient facts to show she is plausibly entitled to relief.  As discussed *infra* she has failed to do so.

### a. Racial Discrimination

To survive a motion to dismiss a claim of racial discrimination, Walker must allege a *prima facie* case, i.e., that: (1) she belongs to a racial minority; (2) she applied for a job for which she was qualified when the employer was seeking applications; (3) she was rejected from said position; and (4) after the rejection the job remained open to others of similar qualifications.  *McDonnell Douglas Corp.*, 411 U.S. at 802–05.  This alleged treatment by an employer or

potential employer must be plausibly committed because of race. *Ruffin*, 126 F. Supp. 3d at 527. The mere allegation that actions conducted against an individual of a protected class were not also conducted against white employees is conclusory and insufficient for a discrimination claim. *Francis v. Giacomelli*, 588 F.3d 186, 195 (4th Cir. 2009).

In Walker's Response, she discusses two different positions for which she unsuccessfully applied. ECF No. 14-1, at 8–9. Read most favorably to Walker, her version of events seems to indicate that for the position that remained a paid position,[6] she believes she should have been hired because she had sufficient experience, even if she did not have the required degree. *Id.* at 8 (claiming that the person who was hired "had a degree but not the experience."). Unfortunately for Walker, disagreeing with the legitimate reason a company hired another individual is not alleging discrimination. *See McCleary-Evans*, 780 F.3d at 588 (rejecting as implausible the inference of "invidious discrimination" "in light of the 'obvious alternative explanation' that the decisionmakers simply judged those hired to be more qualified and better suited for the positions") (quoting *Iqbal*, 556 U.S. at 682)). Inferring that Walker was rejected from the position due to her race would be impermissible speculation.

### b. Racially Hostile Work Environment

A viable claim for a racially hostile work environment must allege that: "there is (1) unwelcome conduct; (2) based on the . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010). "To establish a hostile environment claim, [the plaintiff] must allege and prove that 'but for' his race . . . , he would not have been the victim of the alleged discrimination." *Id.* (quoting *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). "Mere speculation as to racial . . .

---

[6] Walker does not appear to extrapolate on the position that became unpaid.

animus will not suffice to prove that [the plaintiff] suffered unwelcome conduct due to race." *Alexander v. U.S. Dep't of Veterans Affairs*, Civil No. A. DKC 10-3168, 2012 WL 78874, at *5 (D. Md. Jan. 10, 2012); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). "[V]iable hostile work environment claims often involve repeated conduct," *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 284, 277 (4th Cir. 2015), but a single incident of extremely serious harassment, for example using a deeply offensive racial epithet, may create a hostile work place environment. *Id.* at 180.

Whether an environment is sufficiently hostile depends on the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). It is a high standard to satisfy as "[w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

As with Walker's claim of racial discrimination, her claims of a racially hostile work environment are all "mere speculation as to racial . . . animus." *Alexander*, 2012 WL 78874, at *5. The only incident where race was even mentioned was when she alleged that Hu told her "GSK would not promote black people" and "that the person that was going to hire for the position that [Walker] was attempting to shadow, was not going to hire [her] as he did not like black people at all." ECF No. 14-1, at 4. Walker admits, however, that she confronted the individual and he denied it, assuring her he would address the rumor. *Id.* at 5. Walker seems to envision the offending conduct as that of Hu saying the hiring supervisor would not hire black candidates, but Hu's opinion about a particular manager cannot plausibly be considered

sufficient allegations of a pervasively hostile work environment; it was a one or two time observation that does not come anywhere near the use of a racial epithet. *Compare Boyer-Liberto*, 786 F.3d at 180. Walker has simply failed to allege a racially hostile work environment.

### c. Retaliation

To survive a motion to dismiss for a claim of retaliation, Walker must allege, and ultimately prove, that: "(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (internal marks omitted). Adverse action must have been conducted by the employer and must be truly adverse. *Id.*; *Foster*, 787 F.3d at 250. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "An employee's decision to report discriminatory behavior cannot immunize the employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* For a schedule modification to be an adverse action, it must be significant. *See Parsons v. Wynne*, 221 F. App'x 197 (4th Cir. 2007) (removing an employee from an alternative work schedule is not an adverse employment action); *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 590, 603, *aff'd* 465 F. App'x 274 (4th Cir. 2012) (removing an employee from a schedule that would allow him to pick up his children from school was not an adverse action).

Walker alleges several examples of what she believed to be adverse actions taken against her: being "blacklisted" by the biotech industry, not being allowed to shadow another employee, the supervisor's change in behavior towards her, and being transferred to LSM. ECF No. 14-1, at 11–12. These allegations fail to rise to the level needed to be adverse actions. First, the allegation that Walker has been "blacklisted" is mere speculation; she does not allege who "blacklisted" her, where, or even how. Second, the allegations concerning Hu and Currie's change in behavior and being forbidden from shadowing another employee do not rise above "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. Lastly, the transfer to LSM cannot plausibly be considered an adverse action. Even if the change in schedule was a hardship, this does not meet the standard. Conversely Walker admits that Currie allowed her to work the same schedule she had previously worked, indicating that whatever modification occurred was remedied.

## CONCLUSION

For the foregoing reasons, GSK's Motion to Dismiss [ECF No. 10] will be granted and Walker's Complaint [ECF No. 1] will be dismissed. A separate order follows.

August 11, 2016                                               /s/
Date                                                    ROGER W. TITUS
                                                        UNITED STATES DISTRICT JUDGE